(No. 88-CC-1130▮▮▮▮▮▮▮▮▮▮

LLOYD FRANCIS, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1994.*

SCHOENFIELD & SWARTZMAN (RICH SCHOENFIELD, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (TERENCE J. CORRIGAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Frederick, J.

Claimant, Lloyd Francis, an inmate in the Illinois Department of Corrections, filed his complaint sounding in tort on October 28, 1987. An amended complaint was filed on July 29, 1988. The amended complaint alleges Claimant lost part of his thumb through the negligence of the Respondent when he was ordered to clean a glue press machine without proper training and which was not properly equipped.

The cause was tried before Commissioner Johnson.

### The Facts

In July of 1987 the Claimant, Lloyd Francis, was incarcerated by the Illinois Department of Corrections (IDOC) in the Graham Correctional Center in Hillsboro, Illinois, as a result of a theft conviction. At that time, Claimant had been at Graham for about eight months.

The Graham Correctional Center operated a small furniture factory in one large room. The view across the factory was obstructed by the office area.

Claimant's work assignment was to make cardboard boxes and to place furniture into those boxes. This had been his work assignment for six months or more, prior to the date of his injury on July 13, 1987.

Mark Everett was employed by the State of Illinois Correctional Industries at Graham in July 1987. He was the "lead worker" which meant that he was the floor foreman.

On July 13, 1987, the Claimant was in an accident involving a glue press machine. The glue press was about 20 feet from the area where Claimant worked with the boxes. On the day of the accident, Claimant and John Williams were told to clean the glue press by a supervisor. The supervisor's name was Mr. Nisely. The glue press had just been used for gluing particle boards and there was glue on the rollers of the machine. Claimant and Williams proceeded to try to clean the glue press with soap, water and a rag. Claimant was wiping the rollers with the rag. Claimant was not told to use the rag by supervisor Nisely.

The glue press was on while Claimant was wiping a roller with the rag. The roller pulled the rag into the machine and Claimant's right thumb was caught in the roller. Claimant tried to pull back and part of his thumb was pulled off. Blood shot out of his thumb and he felt pain.

Williams wrapped a rag around Claimant's thumb and took him to the front desk of the factory. Claimant was then rushed to the prison health care unit where he was seen by Dr. Baggia. During this time, Claimant did not see either Mr. Nisely or Mr. Everett. Claimant remained in the prison health care unit for about one half hour and then was taken by prison officials to the Hillsboro Area Hospital emergency room where he was examined by Dr. McFarlin. After receiving emergency care from Dr. McFarlin, the Claimant was transported by ambulance to Memorial Medical Center in Springfield. During this time, Claimant's thumb was throbbing and he was in a great deal of pain. Before being placed in the ambulance for the trip to Springfield, Claimant was given Demerol.

Mr. Everett was not near the glue press when the accident occurred. It was Mr. Everett's job to circulate around the shop supervising a number of different stages of the operation. Mr. Everett could not remember how many stages he was supposed to have been supervising at the same time. Mr. Everett was informed of Claimant's accident by the officer on the desk, Officer Shroyer.

There was a warning on the glue press not to put hands near the rollers. Claimant was aware of this warning. The manufacturer's instruction manual for the glue press indicated a long-handled brush should be used to clean the rollers. The manufacturer's manual for the glue press states, in part:

"READ AND UNDERSTAND THESE OPERATING AND SAFETY IN-STRUCTIONS BEFORE OPERATING, CLEANING OR SERVICING THIS MACHINE. This instruction manual is a must for machine operators. It should be kept available so that they will become familiar with the operation, adjustment, lubrication, and safety instructions ° ° °.

EMPLOYER'S RESPONSIBILITY TO: PERMIT ONLY trained and authorized employees to operate equipment ° ° °. INSTRUCT, TRAIN AND SUPERVISE the safe method of work. AN ACCIDENT IS MOST LIKELY TO OCCUR WHEN OPERATOR IS UNFAMILIAR WITH MACHINE ° ° °. BE SURE YOUR OPERATOR IS PROPERLY TRAINED AND SAFETY RULES ARE CLEARLY UNDERSTOOD BEFORE YOU GIVE PERMISSION TO OPERATE OR CLEAN-UP.

MACHINE CLEAN-UP Operator is closer to machine during clean-up than during production. Extra care should be taken; follow these basic principals: DO NOT BEGIN CLEAN-UP UNTIL YOU HAVE READ AND UNDER-STAND THE CLEAN-UP INSTRUCTIONS. THE REVERSING FEA-TURE ON THIS MACHINE ENABLES IT TO ALMOST CLEAN ITSELF IF PROPER PROCEDURES ARE TURNING. HANDS SHOULD NEVER TOUCH ROLLS WHILE THEY ARE TURNING. WHENEVER ONE HAND IS NEAR A REVOLVING ROLL, KEEP OTHER HAND ON OPERATING CONTROL BAR ° ° °. If rolls must be wiped, STOP the rolls, wipe accessible area, (with operating bar) job in reverse to another position, STOP rolls and wipe-repeat until rolls are wiped clean. Use paper wipes.

BRUSH with long handles may be used for clean-up ° ° °. When used, hold brush at end of handle as far from roll as possible with other hand on operating control bar."

Mr. Everett testified he warned all workers who used the machine about using safety around this machine.

This usually was a ten-minute proceeding when new workers came in. He could not specifically remember warning Claimant but was sure he had done so. This was a dangerous machine requiring safety precautions.

At Memorial Medical Center in Springfield, the Claimant underwent surgery for a right thumb tip amputation. The surgery was performed by Dr. Zook who found that Claimant had suffered an avulsion of the palm side of his thumb beginning at the interphalangeal joint and extending to the tip of the thumb, that a segment of the distal phalanx bone was exposed, and that nerves as well as blood vessels had been avulsed. According to Dr. Zook, the damaged area was approximately 3 by 2.5 centimeters.

On the day of the accident, Dr. Zook performed a cross-finger flap operation in which he connected Claimant's right thumb and index finger in an effort to repair the damage to Claimant's nerves and blood vessels. This operation entailed grafting skin from Claimant's left groin.

Claimant was released from Memorial Medical Center and returned to the prison where he was placed in the health care unit. He remained there for about a week and a half to two weeks. On July 30, 1987, the Claimant was brought back to Memorial Medical Center in Springfield where a second operation was performed to divide the cross-finger flap. In both operations, Claimant was given general anesthesia through an endotracheal tube. On August 10, 1987, Dr. Zook found that the Claimant's wounds were "almost healed."

At the time of the trial, the Claimant was 33 years old. He was a high school graduate. At the time of the trial, the Claimant was incarcerated on a burglary conviction in Galesburg and his job assignment was to sweep with a broom. The Claimant continued to be paid his

prison wages after the accident, even though he could no longer work in the factory.

## The Law

The State owes a duty to prison inmates to provide safe working conditions, including safe and adequate work tools with which to perform their assigned work. *Reddock v. State* (1978), 32 Ill. Ct. Cl. 611; *Hughes v. State* (1984), 37 Ill. Ct. Cl. 251.

The manufacturer's manual stated that a long-handled brush should be used to scrub glue off of the rollers and the State's only witness, Mark Everett, testified that using such a brush was the proper way to clean the machine. A long-handled brush was an essential work tool needed to safely clean the rollers of the glue press, but there was no brush of any kind available to Claimant on the day of the accident. The State negligently caused Claimant to be injured by failing to provide him with the proper equipment, namely a long-handled brush, to scrub the glue off of the glue press rollers.

The glue press manufacturer's manual specifically calls for using paper wipes to use in wiping off the rollers after first scrubbing the rollers with a long-handled brush. The State provided Claimant with only rags to use to wipe off the rollers, instead of the paper wipes specified by the manufacturer's manual. Paper wipes are safer to use on rollers than rags because a paper wipe is more likely than a rag to tear away, rather than to pull a worker's hand into the machine. The State negligently caused Claimant to be injured by failing to provide him with the proper equipment, namely paper wipes, to wipe the rollers.

IDOC has a duty to supervise inmates as they work in order to provide a safe working environment. (*Hughes v. State* (1984), 37 Ill. Ct. Cl. 251.) No supervisor was

present while Claimant and another inmate were trying to clean the glue press, nor could Mark Everett, the supervisor, see across the factory from where he was to the glue press. The State negligently caused Claimant to be injured by failing to provide proper supervision for the inmates cleaning the glue press.

The manufacturer's manual stated in several places that anyone who was going to clean the glue press should read the instructions in the manual before attempting to do so. Contrary to the manufacturer's instructions, Claimant was never given the glue press manual to read before he was told to clean it.

The State violated the manufacturer's safety recommendations by not having inmates who cleaned the glue press first read the manual on how to do so and thereby negligently failed to provide proper supervision and training in how to safely clean the glue press and negligently failed to provide a safe work environment.

Assuming that Claimant had received some instructions on how to clean the glue press in the past, those instructions were not proper or sufficient as, at most, those were a few minutes of perfunctory verbal instructions, given quite some time before Claimant worked on the glue press, without having Claimant read the instruction manual, without warning about the danger of the rollers to one's hands, without warning that whenever one hand was near a roller, another hand should be on the operating control bar, and without warning that when scrubbing or wiping the rollers, the machine should be stopped and a hand should be kept on the control bar.

The State negligently caused Claimant to be injured by failing to properly instruct Claimant on how to clean the glue press. The glue press ripped off part of Claimant's

thumb, tearing it down to the bone and damaged both blood vessels and nerves. Claimant suffered severe pain at the time of the accident and for weeks thereafter.

Claimant underwent two (2) operations to repair the damage to his thumb and both of those operations required general anesthesia. The first and more extensive of those operations entailed not only sewing the thumb and index finger together, but also grafting tissue from Claimant's groin to graft onto his thumb. Claimant's injury was to his right thumb and he is right-handed.

Claimant has been left with a permanent disability whereby the bottom of his thumb from the joint to the tip lacks feeling and the remainder of the bottom of his thumb is overly sensitive to sensation and thus affects Claimant's ability to pick up small objects and to write. The Claimant had no medical bills or lost wages.

As an inmate, the Claimant was required to take orders and carry them out. To refuse to do so would subject him to disciplinary action. He did not occupy a position of independence which a person outside a penitentiary occupies. His choice of actions being limited, he kept silent and did as he was ordered. (*Goodrich v. State* (1984), 36 Ill. Ct. Cl. 326.) However, with the advent of comparative negligence, the Court has looked at the conditions under which the inmate acts in the face of known danger to determine if any comparative fault should be assessed. *Douglas v. State* (1989), 41 Ill. Ct. Cl. 29.

In the present case, the glue spreading machine was self-cleaning, it was proper to leave the machine turned on during the cleaning operation. Claimant was aware that he should not put his hands near the moving rollers. There were some warnings to the Claimant not to put his hands near the rollers.

We, therefore, find that Claimant was 30% negligent. The value of Claimant's injury is $20,000. This total must be reduced by Claimant's 30% comparative negligence to $14,000.

Therefore, it is ordered that an award of $14,000 is hereby entered in favor of Claimant, said award being in full and complete satisfaction of Claimant's claim.