(No. 92-CC-2270—

MARK DAVIS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1998.*

*Order on petition for rehearing filed August 5, 1998.*

MARK DAVIS, *pro se.*

JIM RYAN, Attorney General (MICHAEL A. WULF, Assistant Attorney General, of counsel), for Respondent.

OPINION

JANN, J.

This is a claim for personal injury pursuant to section 8(c) of the Illinois Court of Claims Act. (705 ILCS 505/

8(c).) The Claimant alleges in his complaint that on March 12, 1990, he was injured while operating a table saw in the wood shop at the Centralia Correctional Center.

The Claimant seeks $35,000 in damages for permanent injuries, bodily pain and mental anguish that resulted from the tip of his right index finger being severed. He contends the Respondent failed to provide him with safe and adequate working equipment, proper supervision or a safe working environment.

A hearing was held before Commissioner Stephen R. Clark on May 2, 1996. Evidence at the hearing consisted of testimony from the Claimant and Ronald Winkler, a carpenter at Centralia, and the Claimant's supervisor in the wood shop. Admitted into evidence were orders for delivery of saw blades to be sharpened by an outside contractor. The parties did not file briefs.

The Claimant testified that on March 12, 1990, he was dadoing a piece of wood, a procedure in which wood is cut to form a dado joint. He stated that he told his supervisor he was making a dado joint, and the supervisor said that was okay. The Claimant testified that he was cutting the piece of wood by pulling it through the saw instead of pushing it because the wood splintered when he attempted to push it through the saw. He stated that the blade grabbed the wood and slung it in a counter-clockwise fashion turning the wood and his finger into the blade. The Claimant admitted that when he saw that the wood was splintering, he did not seek help from his supervisor. The Claimant testified that during his two and one-half years at Centralia, he never received training with regard to safe procedures, that no safety program had been established, and that the equipment in the wood shop was not properly maintained. He stated that a tool was repaired only if it broke or became inoperable.

He also said there was no way to sharpen saw blades at the facility, and that once, when the blades were sent out to be sharpened, they were returned in worse condition. He said the blades became dull by inmates dropping them in a saw bed at the end of the day instead of laying them down gently. The Claimant stated that the inmates had nothing to use to clean glue and sap off of the blades. The Claimant testified that, although he knew now that pulling wood through a saw is an improper technique, he had learned to use the technique by watching his supervisor and other inmates, and that pulling wood through a saw was an accepted technique in the shop. The Claimant testified that he had previously requested that his supervisor have an expert come to the facility to properly set up, adjust and align the power tools. The Claimant had worked in the wood shop for approximately three years prior to this injury.

Regarding his injury, the Claimant stated that he currently has no dexterity with his finger and has no feeling in the fingertip. He stated that he suffers from arthritis as a result of the injury. The Claimant now works as a cabinet maker, and using screws and nuts and doing fine detailed work has become more difficult. The Claimant also testified that the injury has interfered with his guitar playing. The Claimant stated that he missed two months of work in prison, where he earned $445 per month. He estimates that he will suffer $15,000 in lost future earnings. He stated that he now earns about $29,000 per year as a cabinet maker after his release from the Department of Corrections.

Ronald Winkler, the Claimant's supervisor at the wood shop, testified that he had been a carpenter at Centralia since 1981. He stated that he would tell the inmates the do's and don'ts with regard to using the tools in the

shop. Winkler testified that he told the Claimant not to run anything backwards through any type of saw. He stated that when he saw inmates doing this, he would shut the saw off and fire the inmate. It must be noted, however, that the Claimant was not fired, but was put back to work in the shop after his finger had healed. Winkler testified that on the day of the accident, the work the Claimant was doing was not one of his required duties that day.

Winkler testified that in-house personnel would perform routine maintenance on the machinery, such as cleaning and greasing parts. The saw blades were sent out to be sharpened. The orders for delivery showed that saw blades were sent out to be sharpened 15 times from June 3, 1986, through January 2, 1992. The latest date before the accident that saw blades were sent out to be sharpened was February 1, 1990. However, Winkler could not say when the blade that Claimant used was sharpened last. Winkler testified that after the accident, the blade the Claimant was using was sharp, and that the Claimant was cutting pine, which splinters even when the blade is sharp. On cross-examination, Winkler testified that he could not say in one instance where he was cutting lap joints with the Claimant, a Joe Arnold, and other inmates, that he did not run the wood backwards through a saw.

The Court has held that the State owes a duty to inmates of its penal institutions to provide them with safe conditions under which to perform their assigned work. In order to recover, the Claimant bears the burden of proving, by a preponderance of the evidence, that the State breached its duty of care, that he was free of contributory negligence, and that the negligence of the State was the proximate cause of his injury. (*Rogers v. State* (1991), 44 Ill. Ct. Cl. 149, 152.) The State also has a duty to supervise inmates as they work in order to provide a

safe working environment. *Francis v. State* (1994), 46 Ill.
Ct. Cl. 244, 249.

The *Francis* case is similar to the case at bar. The
Claimant in *Francis* lost part of his thumb while cleaning
a glue press. No supervisor was present while the Claim-
ant and another inmate were trying to clean the glue
press. The State also failed to have the inmates read the
manufacturer's instructions before attempting to clean
the glue press. This Court found the State was negligent
in failing to provide proper supervision and training. (*Id.*
at 250.) In the instant case, it is apparent that there was
no supervision of the Claimant while he was working.
Also, orally giving inmates a list of do's and don'ts is a
poor substitute for proper training and written instruc-
tions on using machinery which has the capability of be-
ing dangerous to life and limb. Therefore, the Court finds
the Respondent was negligent for failing to provide
proper supervision and training in the operation of the
wood shop machinery and tools.

The Court must also consider the conditions under
which an inmate acts in the face of known danger to de-
termine whether comparative fault should be assessed.
(*Douglas v. State* (1989), 41 Ill. Ct. Cl. 29.) Herein, the
evidence is that Claimant had been warned against
pulling wood through a saw in the manner which led to
his injury. Claimant also failed to seek the assistance of
his supervisor when the wood he was sawing began split-
ting. Claimant was engaged in a voluntary project which
was not an assigned task when injured. Claimant has
demonstrated he did have permission to work on the
project which was to the ultimate benefit of the State, as
he was repairing a case for drill bits used in the shop.
Based upon the record, we find Claimant was contributo-
rily negligent in the amount of 40 percent.

Claimant seeks $5,000 for the permanent nature of his injury, $15,000 for loss of future earnings and $15,000 for pain and suffering for a total of $35,000 in damages. Claimant presented no medical reports as to the limitations or impairments he suffers or is anticipated to suffer. He also failed to provide any evidence that his injuries have caused, or will cause, loss of earnings other than statements of his own opinions and conclusions. No departmental report was filed by Respondent which would, presumably, have included medical records relevant to Claimant's injury.

The testimony at hearing indicates Claimant underwent two surgeries to reattach the tip of his finger and to perform a three-stage skin graft. The injury took about two months to heal during which time Claimant received pain medication. He said the medication was effective in relieving the pain and that he did not suffer great discomfort. The Court acknowledges that such an injury is clearly painful. We also note that Respondent did not cross-examine Claimant as to any medical aspect of his injury or impairment.

Claimant stated he has lost dexterity and feeling in his finger and his ability to perform as a cabinet maker has been impaired due to his injury. Claimant was unable to quantify the extent of his impairment other than to state his guitar playing is affected and he is "a little bit less than [I] he was" as a cabinet maker. Claimant was also unable to explain the amounts he requested as compensation, other than to state his request was based upon an assumption that the injury would be detrimental to his profession.

Based upon the record before us, we find Claimant's injury resulted in pain and suffering and permanent injury valued at $15,000. Claimant has failed to prove loss of earnings.

Claimant is hereby awarded the sum of $9,000 in full and complete satisfaction of his claim.

This cause is hereby dismissed.

## ORDER

JANN, J.

This cause comes before the Court on the Respondent's petition for rehearing. Respondent bases its petition for a rehearing upon the basis of misapprehension of the evidence of record which the Court found to impute negligence upon Respondent.

We have carefully considered Respondent's position and reviewed the record. Respondent raises no new issues of fact or law to be considered at rehearing but relies upon certain testimony of record, which it feels merits a finding that Claimant was more than 51% contributorily negligent, and the assertion that the case law cited in our opinion is distinguishable by factual specifics. Respondent's arguments and the facts and case law cited in its memorandum of law were previously considered in our opinion awarding Claimant $9,000 on May 12, 1998. However, Respondent has ignored the testimony of its employee which indicated a scenario of practice and procedure adverse to its contentions herein.

Based upon the foregoing: It is hereby ordered that Respondent's petition for rehearing is denied and our order of award is affirmed.